1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WAYNE ALLEN,

11              Plaintiff,                    No. 2:10-cv-0388 GEB KJN P

12        vs.

13   W. WOOD, et al.,

14              Defendants.                   ORDER

15   _____/

16              Plaintiff is a state prisoner proceeding without counsel in this civil rights action

17   filed pursuant to 42 U.S.C. § 1983.  Plaintiff requests leave to proceed in forma pauperis

18   pursuant to 28 U.S.C. § 1915, and moves for appointment of counsel.  This proceeding is

19   referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

20   In Forma Pauperis Application

21              Plaintiff has submitted a declaration that makes the showing required by

22   28 U.S.C. § 1915(a).  Accordingly, his request to proceed in forma pauperis will be granted.

23              Plaintiff is nonetheless required to pay the statutory filing fee of $350.00 for this

24   action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial

25   partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order,

26   the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's

                                                  1

1   prison trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be

2   obligated to make monthly payments of twenty percent of the preceding month's income credited

3   to plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency

4   to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the

5   filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

6   Motions for Appointment of Counsel

7           Plaintiff moves for appointment of counsel.  Plaintiff states that he is unable to

8   afford counsel, that he has been unsuccessful in his attempts to obtain legal representation, that

9   the fact of plaintiff's incarceration limits his ability to litigate this action, that the issues

10  presented by this case are particularly complex and plaintiff has only a limited knowledge of the

11  law, and that counsel would be better able than plaintiff to present evidence and cross-examine

12  witnesses at trial.  (Dkt. Nos. 6, 11.)

13          The United States Supreme Court has ruled that district courts lack authority to

14  require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist.

15  Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request

16  (but cannot order) the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell

17  v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36

18  (9th Cir. 1990).

19          The court does not find the required exceptional circumstances to warrant a

20  request for voluntary legal representation in this case.  Plaintiff's amended complaint is clearly

21  presented, the relevant facts are limited and straightforward, and the cognizable legal claims are

22  circumscribed and based on well-established principles.  Plaintiff has, to date, demonstrated the

23  ability adequately to represent himself.

24          Therefore, plaintiff's motions for appointment of counsel (Dkt. Nos. 6, 11)  will

25  be denied.

26  ////

2

Screening of First Amended Complaint

Subsequent to filing his original complaint (Dkt. No. 1), plaintiff filed a First Amended Complaint (Dkt. No. 5) ("FAC" or "complaint"), which is therefore the operative complaint.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id.  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal

1  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept

2  as true the allegations of the complaint in question,  id., and construe the pleading in the light

3  most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

4         The factual allegations of the complaint encompass a short period of time, from

5  approximately October 9, 2008 through October 14, 2008, and focus on the alleged failure of

6  several medical personnel at the California Correctional Center ("CCC") in Susanville,

7  California, to provide or obtain adequate medical care for plaintiff whose cast had broken.

8  Although not clear from the complaint, the supporting documents indicate that the cast was on

9  plaintiff's right arm.  (Cmplt. at p. 23.)  The complaint identifies four "Doe" defendants, each a

10  registered nurse, and two named defendants, W. Wood, Supervising Registered Nurse, and A.

11  Pomazal, Healthcare Manager.  Plaintiff is now incarcerated at the Sierra Conservation Center in

12  Jamestown, California

13         The complaint alleges that on October 9, 2008, plaintiff was "screened" by Jane

14  Doe #1 before his admission to administrative segregation.  "During screening plaintiff displayed

15  his broken cast, and exposed broken limb to Jane Doe #1, as well as complained of severe pain.

16  Upon information and belief, she documented his broken cast . . . and then told plaintiff she

17  would document and report his pain and broken cast, as well as his exposed broken limb, which

18  was readily apparent."  (Cmplt. at ¶ 11.)  Plaintiff alleges that Jane Doe #1 failed to reasonably

19  respond to plaintiff's clear need for emergency medical treatment by failing to provide such

20  treatment herself or to summon qualified medical assistance to provide immediate care.

21         The complaint next alleges that on October 10, 2008, Jane Doe #2, while

22  dispensing medication to inmates in CCC's administrative segregation unit, provided plaintiff

23  with only ibuprofen, despite plaintiff's statement that he had been prescribed Tylenol No. 3 by

24  his orthopedic specialist, Dr. Jerry Crum.  Plaintiff alleges that Jane Doe #2 failed to provide or

25  obtain adequate treatment for plaintiff despite "the severity of the injury and easily observable

26  necessity of immediate medical attention," noting that the "exposed broken limb . . . was swollen

1   and purple at [the] time;" that instead Jane Doe #2 acted annoyed and responded sarcastically.

2   (Id. at ¶ 13, 14.)

3          The complaint next alleges that on October 11, 2008, plaintiff obtained the

4   assistance of Sergeant Heflin to be examined by John Doe #1, who "aggravated" plaintiff's injury

5   by insisting that plaintiff wiggle his fingers, then failed to obtain plaintiff's prescription for

6   Tylenol No. 3 on the ground that ibuprofen would better treat plaintiff's inflammation, and stated

7   that he could do "nothing" about plaintiff's cast because plaintiff would be seeing his doctor on

8   Tuesday.  (Id. at ¶ 16.)

9          Plaintiff alleges that also on October 11, 2008, he asked his cellmate, Andre

10  Rhodes, to complete a health care services request form, which was submitted that day, and

11  reviewed the next day by the triage nurse.  (Id. at ¶ 23, Exh. B-1.)

12         The complaint next alleges that on October 12, 2008, John Doe #2 called plaintiff

13  to the interview cages; despite the appearance of plaintiff's injury and plaintiff's complaints of

14  pain, John Doe #2 stated that he was unable to do anything, stating, "I can't do anything for you.

15  You will be seeing your doctor on Tuesday . . . . All I see is ibuprofen, besides, they are better for

16  inflammation."  (Id. at ¶ 19.)

17         Plaintiff alleges that on October 14, 2010, he was seen by his orthopedic

18  specialist, Dr. Jerry Crum, who informed plaintiff that "as a result of his ca[s]t being broken and

19  his finger not being stabalized (sic), his fracture had worsened, resulting in further

20  displacement." (Cmplt. at ¶ 24.)  Plaintiff alleges that Dr. Crum stated, "'The least they could

21  have done is stabalize (sic) your finger, secure the broken piece of cast and try to contact me or

22  another physician.'" (Id.)

23         Plaintiff alleges that each of the "Doe" nurses "failed to respond reasonably to the

24  serious medical condition and emergency brought to their attention, failed to dispense proper

25  pain medication, failed [to] provide emergency and urgent medical attention, and substituted

26  their own opinions rather than investigate as to the pain medication prescribed and reccomnded

5

1   (sic) [and] . . .  failed to summon qualified medical personnel who may have been capable of

2   stabalizing (sic) the plaintiff[']s broken limb.'" (Cmplt. at ¶ 21.)  As a result, alleges plaintiff, he

3   "suffered a medically unjustified delay in treatment, unnecessary and wanton infliction of pain,

4   severe depression, sleepless nights, and further injury."  (Id. at ¶¶ 15, 18, 20, 21, 22.)  Plaintiff

5   has also alleged, in the documents submitted in support of his exhausted administrative grievance

6   (attached to the complaint), that the failure to obtain immediate care "resulted in a shift of my

7   bone, (From not being stabalized) two pins being surgically input my bone, (to hold bone

8   together, when intially was an minor fracture) and the loss of motion in one my limbs,

9   indefinately (sic)."  (Id. at p. 23.)

10          Plaintiff further alleges that each of the "Doe" nurses was under the direct

11   supervision of defendant W. Wood, Supervising Registered Nurse, who was an allegedly

12   negligent supervisor and trained these nurses pursuant to an improper custom of denying urgent

13   medical care.  (Id. at ¶ 21, 29.)  Plaintiff also names defendant A. Pomazal, Health Care

14   Manager, on the ground that he allegedly "failed to properly train, hire and . . . evaluate his

15   medical staff" pursuant to "policies and local procedures and customs" that improperly included

16   "a custom of deliberate indifference."  (Id. at ¶ 22.)

17          The court finds that plaintiff states a potentially cognizable Eighth Amendment

18   claim against each "Doe" defendant for deliberate indifference to plaintiff's serious medical

19   needs.[1]  Although "Doe" defendants are generally disfavored, plaintiff's allegations and

20

21          [1] The unnecessary and wanton infliction of pain constitutes cruel and unusual
     punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);
22   Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).
     In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove
23   that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials
     acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.
24   Seiter, 501 U.S. 294, 298-99 (1991).  Where a prisoner's Eighth Amendment claim arises in the
     context of medical care, the prisoner must allege and prove "acts or omissions sufficiently
25   harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.
          A medical need is serious "if the failure to treat the prisoner's condition could result in
26   further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v.

                                              6

1    supporting documentation demonstrate that the identity of each of these defendants may be easily

2    ascertainable by review of existing documents, inquiry, or discovery.  Plaintiff has provided

3    physical descriptions of three of the "Doe" nurses,[2] and several nurses are identified by name

4    pursuant to the staff's investigation of plaintiff's administrative grievance, i.e., "Registered

5    Nurses (RN's) A. Lawrence, J. Sanderson, Q. Anderson, and Licensed Vocational Nurse A.

6    White."  (Id. at pp. 20, 26.)  In addition, plaintiff's allegations make the requisite causal

7    connection between the conduct of each of the "Doe" nurses and plaintiff's alleged injuries.

8    These allegations satisfy, for present purposes, the requirement of Section 1983 that there be an

9    actual connection or link between the actions of the defendants and the alleged injury to plaintiff.

10    See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

11    (1976).  For these reasons, plaintiff will be permitted a limited period within which to file a

12    Second Amended Complaint that identifies each "Doe" nurse by name before ordering service of

13    process.

14         The court also finds, for screening purposes, that plaintiff has adequately alleged

15    potentially cognizable Eighth Amendment claims against defendants Wood and Pomazal.

16    Although plaintiff improperly asserts respondeat superior liability (Cmplt. at ¶ 29), see e.g.,

17

---

18    Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v.
     Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104).  By

19    establishing the existence of a serious medical need, a prisoner satisfies the objective requirement
     for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

20    Deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere
     with medical treatment, or may be shown by the way in which prison officials provide medical

21    care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).  Delays in providing
     medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a

22    claim of deliberate indifference arising from delay in providing care, a plaintiff must show that
     the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1 994); McGuckin,

23    974 F.2d at 1059.

24       [2]  Pursuant to exhausting his administrative grievance on these matters, plaintiff identified
     three of the "Doe" defendants as follows:  Jane Doe #1 as  "a Fillipino or Asian between 5'0 and

25    5'6" tall;" Jane Doe #2 as "about 5'6" to 5'10" white or hispanic and comes to this unit often;"
     and John Doe #1 as a male who "walks with a limp, older, balding, with glasses in his mid 50's."

26    (Dkt. No. 5, at pp. 16-17.)

1  Hansen v. Black, 885 F.2d 642, 645-646 (9th Cir. 1989)  ("[u]nder Section 1983, supervisory

2  officials are not liable for actions of subordinates on any theory of vicarious liability") (citation

3  omitted), he also challenges the actionable conduct of allegedly inadequate training, supervision

4  and control, see e.g., Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) ("[s]upervisory

5  liability [may be] imposed against a supervisory official in his individual capacity for his own

6  culpable action or inaction in the training, supervision, or control of his subordinates, for his

7  acquiescence in the constitutional deprivations of which the complaint is made, or for conduct

8  that showed a reckless or callous indifference to the rights of others") (citations and internal

9  quotations omitted).

10         The complaint does not, however, state cognizable claims for "medical

11  malpractice," "intentional tort," or "general negligence."  "Mere 'indifference,' 'negligence,' or

12  'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories,

13  622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  See also Toguchi v. Soon

14  Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating

15  a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.");

16  McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more

17  blameworthy than negligence" and "requires 'more than ordinary lack of due care for the

18  prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

19         Nor does plaintiff state cognizable claims for alleged violation of his Fifth and

20  Fourteenth Amendment rights to due process and equal protection.  (Cmplt. at ¶¶ 12, 15, 21, 27.)

21  The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious

22  discrimination based on race, see, e.g., Wolff v. McDonnell, 418 U.S. 539, 556 (1974), but

23  plaintiff makes no factual allegation of racial discrimination.  Similarly, the due process rights

24  encompassed by the Fifth and Fourteenth Amendments protect prisoners from unreasonable

25  deprivations of life, liberty or property without due process of law, id., but plaintiff's factual

26  allegations do not reference, and cannot reasonably assert, any such deprivations.

Accordingly, for the foregoing reasons, the court concludes that plaintiff's First Amended Complaint states only a potentially cognizable Eighth Amendment claim against each defendant.

Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (Dkt. No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motions for the appointment of counsel (Dkt. Nos. 6, 11) are denied without prejudice.

4. Service of the First Amended Complaint is appropriate for defendants W. Wood and A. Pomazal, but remains impossible for the "Doe" defendants. Plaintiff is therefore accorded thirty (30) days after the filing date of this order within which to file a Second Amended Complaint that identifies by name each of the "Doe" defendants.

5. If plaintiff timely files a Second Amended Complaint that identifies all defendants, the court will instruct plaintiff on the procedure for effecting service of process on each defendant.

6. If plaintiff does not timely file a Second Amended Complaint, thus choosing to proceed on the currently operative First Amended Complaint, then, after expiration of the thirty-day period authorizing amendment, the court will instruct plaintiff on the procedure for effecting service on the identified defendants.

7.  If plaintiff does not file a Second Amended Complaint and chooses to proceed on the currently operative First Amended Complaint, then further amendment of the complaint will be authorized only by leave of court pursuant to proper motion demonstrating good cause for such amendment.

SO ORDERED.

DATED:  October 1, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

alle0388,14new.kjn